J. L. HOPKINS & Co., INC. *v.* UNITED STATES (No. 4540)[1]

United States Court of Customs and Patent Appeals, November 4, 1946

*John D. Rode* for appellant.

*Paul P. Rao*, Assistant Attorney General, for the United States.

[Oral argument October 4, 1946, by Mr. Rode]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, rendered November 28, 1945, overruling appellant's several protests (the cases being consolidated for trial) against the collector's classification of importations of henna powder under that provision of paragraph 1558 of the Tariff Act of 1930, reading:

PAR. 1558. * * * there shall be levied, collected, and paid on the importation of all * * * articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

[1] C. A. D. 344.

Appellant claims that the proper classification is under paragraph 1670 of the act—a paragraph of the free list—which reads as follows:

PAR. 1670. Dyeing or tanning materials: Fustic wood, hemlock bark, logwood, mangrove bark, oak bark, quebracho wood, wattle bark, divi-divi, myrobalans fruit, sumac, valonia, nutgalls or gall nuts, and all articles of vegetable origin used for dyeing, coloring, staining, or tanning, all the foregoing, whether crude or advanced in value or condition by shredding, grinding, chipping, crushing, or any similar process; all the foregoing not containing alcohol and not specially provided for.

Although the memoranda of the collector do not so state, it is a fair assumption that in classifying the merchandise he was governed by a decision rendered March 31, 1933, by the First Division of the United States Customs Court (composed of different judges than those who decided this case) in the case of *J. Schanzenbach & Co.* v. *United States*, T. D. 46308; which held merchandise of an identical kind (which had been classified by the collector under paragraph 61 of the Tariff Act of 1930 as a nonalcoholic preparation used for application to the hair) classifiable under paragraph 1558, *supra*. In that case the importer claimed alternatively under paragraphs 34, 1670, and 1558.

No appeal was taken from that decision.

In the instant case the claim of the importer is limited to paragraph 1670, *supra*.

Whatever may have been the reasons governing the collector, the trial court in this case evidently felt the decision in the prior case to be *stare decisis* of the issue involved. In its decision in the instant case, after reciting the substance of the testimony of the single witness called by the importer, it quoted from the former decision the reasons assigned for the conclusions there reached, and said:

In view of the foregoing decision, holding powdered henna to be properly dutiable as a nonenumerated manufactured article, as assessed by the collector herein, and no appeal having been taken therefrom, we are constrained to enter judgment in favor of the defendant.

There having been no appeal of the *Schanzenbach & Co.* case, *supra*, nor of any other case involving powdered henna, the matter of its classification is before us for the first time. In this case, however, we are not concerned with paragraphs 34 and 61, the issue being between paragraph 1670, *supra*, and paragraph 1558, *supra*.

It may be said that no brief was filed, nor any oral argument presented before us on behalf of the Government.

It appears from the testimony in this case that henna in powdered form is obtained by grinding the leaves of a shrub indigenous to both India and Egypt. As imported, some of the material was green in color and some brown. The witness stated that the age of the leaf

determined the color of the powder. In using it the colors are sometimes mixed or blended. The grinding is done on a chaser mill which consists of a bed stone and two rolling stones. The henna leaves are fed into the mill and are caught between the rolling stones as they revolve about the bed stone and ground to powder. The importer involved in this case sells the powder to "Various beauty parlors, cosmetic shops." The only use shown is on the hair to tint it an auburn color. In answer to a question as to how it is used, the witness stated: "You boil the water and add the henna to it until you get a rather thick paste, and you apply it to the hair in a special way that cosmeticians really know." He testified that henna is the only vegetable dye that "remains indefinitely," and that "It is the only thing that does not coat hair but actually goes into a chemical combination with hair."

As has been indicated, the trial court in this case did not state any reason for its holding, except that it followed the holding in the *Schanzenbach & Co.* case, *supra*. In that case the court, speaking through the late revered Judge McClelland, said *inter alia:*

The record evidence very clearly indicates that this merchandise has been reduced from the henna leaf to the powdered condition as we find it with the deliberate purpose of preparing it for the use indicated by the testimony of Mr. Mitchell, that is, after the addition of water thereto the combination is manipulated and applied to the hair in paste form, the effect of which is to change the color of the hair.

We are decidedly of the opinion that such effect upon the hair is not to dye it within the meaning of that term as used in paragraph 1670.

It then stated its reasons for holding paragraph 61 inapplicable, and continued:

It is equally certain that the Congress, in framing paragraph 1670, *supra*, did not intend to include dyes or coloring matter for the hair. This is clearly indicated, we think, by the opening words of the paragraph, "Dyeing or tanning materials," preceding the substances enumerated. The words "Dyeing or tanning materials" we believe to be used in a commercial sense and not intended to include hair dye.

It is pointed out by counsel for the importer that the merchandise, although not designated *eo nomine*, falls literally within that phraseology of paragraph 1670 reading, " \* \* \* all articles of vegetable origin used for dyeing, coloring \* \* \* advanced in value or condition by \* \* \* grinding \* \* \* not containing alcohol and not specially provided for," and asserts that "it is difficult to understand upon what basis it can be excluded from the provisions of Paragraph 1670."

The brief states:

It is submitted that there is nothing in the language of Paragraph 1670 which excludes from its provisions *any* article of vegetable origin used for dyeing or

coloring or staining or tanning. Nor is there anything in the words at the beginning of the paragraph, namely, "Dyeing or Tanning materials" which can lead to the conclusion drawn by the court.

It is not clear what the court intended to convey by stating that the words dyeing or tanning materials were believed to have been used in a commercial possibly sense and not to include hair dye.

The record in the case at bar shows quite clearly that the only use of henna powder is for dyeing hair and that the importer alone sells 500,000 pounds a year for that purpose. Certainly that is a commercial use in every sense of the word. This court can take judicial notice of the fact that the beauty parlor industry is a large and well established one in the American scene.

The brief also recites what is referred to as "the legislative background" of the paragraph as shown in the Summary of Tariff Information 1929, prepared by the United States Tariff Commission for the use of the Ways and Means Committee of the House of Representatives in preparing the bill which became the Tariff Act of 1922, paragraph 1568 of which was identical with paragraph 1670 here at issue.

The summary stated, in substance, citing the pertinent decisions or rulings (see vol. II, p. 2322), that importations of crude saffron used for dyeing, coloring, or staining; saffron flower petals in their natural condition, packed in tins and used for coloring soup, cooked fish, etc., and not used for drug purposes, and, in two instances, saffron powdered for culinary use, were admitted free of duty under paragraph 1568. See Abstract 50082, 48 Treas. Dec. 667 and Abstract (N) 4514, 52 Treas. Dec. 721.

Also, the summary (vol. I, p. 198, et seq.) sets forth information concerning the extracts provided for in paragraph 39 of the 1922 act derived from certain of the raw materials covered by paragraph 1568 of that act, and appellant directs attention to the fact that there were uses of certain of these extracts for purposes other than for dyeing textiles and leather.

It is insisted that the principle of the decision in the *Schanzenbach & Co.* case, *supra*, was irreconcilable with that stated in Abstracts (N) 4514, *supra*, and 50082, *supra*, of which latter two the Congress had specific notice which it, in effect, ratified by the reenactment *in haec verba* of paragraph 1568 of the 1922 act as paragraph 1670 of the 1930 act.

In the brief it is said:

Merely because one commodity is used to color or dye food products while another is used to color or dye hair is no reason to grant one and deny the other a classification under Paragraph 1670 as an article of vegetable origin used for dyeing or coloring.

Accordingly, it is alleged that the trial court erred in finding and holding that the decision in the *Schanzenbach & Co.* case, *supra*, was controlling herein.

The trial court, of course, is not subject to any criticism for following the decision referred to. We do not undertake to say here what this court would or might have concluded had that case been brought before us upon a record requiring consideration of paragraphs 34 and 61, but we can see no reason based upon the record here justifying a holding that paragraph 1670 is inapplicable. In literal terms the merchandise is described by the language of the paragraph which, of course, is more specific than the catch-all provision of paragraph 1558.

The judgment of the United States Customs Court is *reversed* and the cause *remanded* for further proceedings consistent with the views herein expressed.